276 So.2d 198 (1973)
Marjorie BOND et al., Appellants,
v.
KOSCOT INTERPLANETARY, INC., a Florida Corporation, et al., Appellees.
No. 71-1000.
District Court of Appeal of Florida, Fourth District.
April 9, 1973.
Rehearing Denied May 8, 1973.
Joseph C. Long, and Dale E. Anstine, Carter, Anderson, Anstine & Martin, Orlando, for appellants.
Gordon D. Simonds, and Tanya M. Plaut, Orlando, for appellees.
REED, Chief Judge.
On 19 May 1970 the plaintiffs filed a complaint in the Circuit Court for Orange County, Florida against the defendant Koscot Interplanetary, Inc. The complaint averred that plaintiffs had purchased agreements from the defendant under which they were entitled to sell cosmetics supplied by the defendant. Under these contracts several of the plaintiffs were designated as "Directors" and some were designated as "Supervisors". According to the complaint, the defendant's marketing program encouraged plaintiffs to seek out other persons to become distributors for the defendant, the inducement being the offer of a substantial finder's fee to be paid by the defendant to plaintiffs for each new distributor recruited. The complaint charged the defendant's scheme of operation was a lottery in violation of F.S. § 849.091, F.S.A. and that plaintiffs' contracts with the defendant were securities for purposes of F.S., Chapter 517, F.S.A. and sold in violation thereof. The relief sought was a restitution of the monies paid for the distributorship agreements together with incidental relief authorized by § 517.21, F.S. The trial court dismissed the complaint for failure to state a cause of action. Thereafter this court held that the complaint stated a cause of action on both theories mentioned above against defendant Koscot Interplanetary, Inc. See Bond v. Koscot *199 Interplanetary, Inc., Fal.App. 1971, 246 So.2d 631.
After remand, the defendant Koscot filed an answer denying all allegations of the complaint, but setting up no affirmative defenses. The cause was tried before the court without a jury on 1 November 1971. From the evidence the court found:
"... Plaintiffs have failed to establish by a preponderance of the evidence that Defendant's program was a pyramid club or lottery. The Court further finds that Plaintiffs have failed to establish by a preponderance of the evidence that the Directors' Contracts of Plaintiffs with Defendant were securities which were required to be registered."
The basic question presented by this appeal is whether or not the trial judge misconceived the legal effect of the evidence. The evidence indicates that most of the plaintiffs held positions as "supervisors" in Koscot. Several plaintiffs were "directors". The positions were evidenced by written documents entitled "Distributor Application and Agreement". These agreements tell virtually nothing about the relationship between the holder of the position therein described and the defendant Koscot. A document published by the defendant entitled "The Distributors Wholesale Manual" was introduced in evidence and explains the positions in detail. According to the manual, one who becomes a "supervisor" in defendant's organization pays $2,000.00 to the defendant for this position (with one exception not material here). In return he receives a supply of "kosmetics" and the right to buy more from Koscot for a substantial discount off the retail price. The manual states:
* * * * * *
"The Supervisor earns profits both from personal sales (in the case of a woman Supervisor) and the sales of his direct distributors. Since the Supervisor receives wholesale and retail training, he is urged to let his woman manager handle his Co-Ordinators and Beauty Advisors.
* * * * * *
The Supervisor also receives special bonuses for sponsoring new distributors into the program. For each new "Workin" or "Buy-in" Supervisor he creates, the Supervisor responsible receives a Finder's Fee of $500 directly from the company.
The Supervisor also receives a Finder's Fee of $25 for each Co-Ordinator that he sponsors into the program."
* * * * * *
From the foregoing it appears a supervisor would be materially benefitted by bringing into the organization other people as supervisors and co-ordinators.
The manual indicates that a director (who must first have been a supervisor) is required to pay the defendant $4,500.00 for that position. He receives substantially the same privileges as a supervisor, but in addition thereto receives from the defendant $2,500.00 for each supervisor whom he "sponsors" for the position of director. Like a supervisor, the director receives $500.00 for each new supervisor whom he brings into the organization.
We held in Frye v. Taylor, Fla.App. 1972, 263 So.2d 835, that the above described relationship between the defendant and the so-called directors was a plan or device in violation of F.S., § 849.091, F.S.A. In our opinion, that holding is equally applicable to the above described relationship between the defendant and its supervisors. It would appear to us that the relationship between the defendant and its supervisors and directors falls within the following operative provisions of § 849.091:
"The organization of any ... group organized or brought together under any plan ... whereby fees .. . to be paid or given by members thereof are to be paid or given to any other member thereof, which plan... includes any provision for the increase in such membership through a chain process of new members securing other new members *200 and thereby advancing themselves in the group to a position where such members in turn receive fees. .."
In Frye v. Taylor, supra, we also held that a supervisors agreement identical to that involved in this case was a "security" within the purview of § 517.02(1). We see no reason why that holding should not be controlling as to the director agreements now before this court.
Accordingly, we conclude that the trial court misconceived the legal effect of the evidence in finding that the aforesaid contracts were not "securities" for purposes of F.S., Chapter 517, F.S.A. and that the contractual relations between the plaintiffs and defendant were not a part of an illegal lottery in violation of F.S., § 849.091, F.S.A. For this reason, we reverse the final judgment and remand the cause to the trial court for further proceedings consistent with this conclusion.
Reversed and remanded.
WALDEN and MAGER, JJ., concur.